UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BILLY ROBERTS, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|   vs. | ) | 1:11-cv-0197-RLY-TAB |
| | ) | |
| CITY OF CARMEL, Acting By and | ) | |
| Through Its Police Department, | ) | |
| MATTHEW L. BROADNAX, | ) | |
|     Defendants. | ) | |

**ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

On the morning of February 15, 2009, Meri Van Asten ("Van Asten") walked into Carmel Fire Station No. 41 ("Carmel Fire Station") and claimed that her boyfriend, Billy Roberts ("Roberts"), had beaten and sexually assaulted her. Officers from the Carmel Police Department ("CPD") arrested Roberts that same day and charged him with rape. On May 5, 2010, the day of Roberts' rape trial, Van Asten did not appear as a material witness, and the rape charge against Roberts was dismissed. The next day, CPD officers arrested Roberts again for battery, intimidation, and invasion of privacy, the alleged victim again being Van Asten. Roberts was arrested two other times – May 17, 2010, and June 13, 2010 – for charges emanating from, *inter alia*, his violation of a protective order forbidding him to have contact with Van Asten.

Roberts filed the present Complaint on February 8, 2011, against the City of Carmel ("City"), Matthew L. Broadnax ("Officer Broadnax"), Officer Sedbury, Officer

1

Dunlap, and Officer Loveall alleging four claims under 42 U.S.C. § 1983 ("Section 1983"): (1) excessive force, (2) illegal search, and (3) false arrest, in violation of Roberts' Fourth Amendment rights; and (4) a *Brady* claim for failing to turn over a tape of an interview with Van Asten which allegedly contained exculpatory evidence, in violation of Roberts' Fourteenth Amendment Due Process rights. Roberts also brings state law claims against the City under a theory of respondeat superior for (1) false arrest, (2) malicious prosecution, (3) intentional infliction of emotional distress, and (4) negligence.

On June 29, 2012, Roberts filed a Stipulation of Partial Dismissal ("Stipulation") of all individual capacity claims against Officer Sedbury, Officer Dunlap, and Officer Loveall, and all claims pertaining to the June 13, 2010, arrest, with no further explanation. (*See* Stipulation of Partial Dismissal, Docket # 33). From a review of Roberts' Complaint, it appears that the Stipulation covers Roberts' Section 1983 false arrest and illegal search claims related to his May 17, 2010,[1] arrest by Officer Sedbury, Officer Dunlap, and Officer Loveall; and his Section 1983 false arrest, illegal search, and excessive force claims related to the June 13, 2010, arrest by Officer Sedbury, Officer Dunlap, and Officer Loveall; and the state law false arrest claims arising from those same two arrests. Finally, neither of the parties' briefs address the merits of Roberts' Section 1983 illegal search claims related to his other arrests, to the extent there ever was one (the Complaint is not clear). The court therefore assumes all claims arising from alleged

---

[1] Roberts also withdrew all claims relating to his May 17 arrest in his Response to Defendants' Motion. (*See* Response at 10, Docket # 42).

2

illegal searches are no longer at issue.

Defendants' Motion for Summary Judgment addresses Roberts' remaining claims against Officer Broadnax and the City.  These claims include: Roberts' Section 1983 false arrest claims arising from his February 15, 2009, and May 6, 2010, arrests; Roberts' Section 1983 *Brady* claim; and Roberts' state law tort claims for false arrest, malicious prosecution, intentional infliction of emotional distress, and negligence.  The court, having read and reviewed the parties' respective briefs, the relevant case law, and the designated evidence, now finds Defendants' Motion should be **GRANTED**.

## I.     Factual Background

On the morning of February 15, 2009, Officer Broadnax was dispatched to the Carmel Fire Station to take a report of a walk-in battery. (Defendants' Ex. 1, Deposition of Matthew Broadnax ("Broadnax Dep.") at 10; Defendants' Ex. 2, Affidavit of Probable Cause at 1).  When Officer Broadnax arrived, Van Asten was being examined by medics from the Fire Station.  (Affidavit of Probable Cause at 1).

Van Asten informed Officer Broadnax that her boyfriend, Roberts, had beaten her. (Broadnax Dep. at 11).  Van Asten was crying and appeared jittery and nervous.  (*Id*.). Officer Broadnax observed that Van Asten had bruises on her face and body, and that clumps of her hair were missing.  (*Id*.).  Officer Broadnax checked with dispatch and learned that there had been a domestic dispute between Van Asten and Roberts three months earlier.  (*Id.* at 23).

At some point (the record is not clear), Van Asten was given a portable breath test.

3

(*Id*. at 27). It reflected a .29 alcohol concentration. (*Id*.). Van Asten testified that she was a severe alcoholic, and that, before she entered the Carmel Fire Station on February 15, 2009, she had drunk a large bottle of Listerine. (Deposition of Meri Van Asten ("Van Asten Dep.") at 21). Officer Broadnax testified that she did not appear to be intoxicated when he interviewed her. (Broadnax Dep. at 27). To him, her demeanor appeared "to be consistent with a person who was extremely upset and sometimes [] doesn't make a lot of sense and you have to ask them for clarification." (*Id*. at 14-15).

The Carmel Fire Department transported Van Asten to St. Vincent Hospital to treat her for her injuries and to be examined by a sexual assault nurse. (*Id*. at 12-13, 35). In Officer Broadnax's presence, Van Asten talked with Shirley Cecil ("Cecil") from Prevail, a victim's advocate service in Hamilton County specializing in domestic abuse. (Defendant's Ex. 4, Sworn Statement of Shirley Cecil ("Cecil Statement"); Defendant's Ex. 3, Deposition of Harland McNair ("McNair Dep.") at 18; Broadnax Dep. at 33). Van Asten informed Cecil that Roberts beat, slapped, kicked, and choked her. (Cecil Statement). Although Van Asten was not certain if he penetrated her vaginally or anally, she did state that he forced her to perform oral sex. (*Id*.).

Van Austen also gave a recorded statement, in Officer Broadnax's presence, to Detective Harland McNair ("Detective McNair"). (Defendant's Ex. 6, Taped Statement; McNair Dep. at 14, 24-25). Van Asten reported that Roberts thought she had been with another man, and became very angry. (Taped Statement). She reported that he then slapped, punched, and kicked her, pulled a clump of her hair out, and that at one point, he

4

hit her so hard she passed out. (Taped Statement). Van Asten informed Detective McNair, however, that she did not remember if anything sexual happened between her and Roberts. (*Id*.). In Detective McNair's opinion, Van Asten was coherent, and appeared to understand his questions. (McNair Dep. at 17).

Officer Anna Flaming ("Officer Flaming") was called to take pictures of Van Asten's bodily injuries. (Defendant's Ex. 7, Deposition of Anna Flaming ("Flaming Dep.") at 10). While at the Fire Station, Officer Flaming noticed "visible injuries" to Van Asten's face. (*Id*. at 10, 31). At the hospital, Officer Flaming noticed injuries to Van Asten's anal cavity and inner thighs that were not consistent with her merely falling down. (*Id*. at 31). In Officer Flaming's opinion, Van Asten's injuries were consistent with penetration by Roberts or an object. (*Id*. at 31-32).

While Officer Flaming was taking pictures of Van Asten's bodily injuries, she noticed patches of hair were missing from Van Asten's head. (*Id*. at 12). Van Asten told Officer Flaming that Roberts pulled her hair out, and that Officer Flaming would find it next to the couch in her apartment. (*Id*.). Van Asten also told Officer Flaming that she propped her apartment door shut with a chair, and placed two knives in the door to keep it from opening. (*Id*.). Officer Flaming then went to Van Asten's apartment to take pictures, and the scene of her disheveled apartment corroborated Van Asten's statements. (*Id*. at 12-13 (testifying that there was some blood throughout the apartment, hair by the couch, and knives near the front door)).

On the day that the events just discussed occurred, February 15, 2009, Officer

5

Broadnax wrote a five-page Affidavit of Probable Cause (or "Affidavit") in support of the following charges against Roberts: rape, criminal deviate conduct, aggravated battery, sexual battery, intimidation, and criminal confinement. (Affidavit of Probable Cause at 1). The Affidavit details Officer Broadnax's conversation with Van Asten and his observations of her physical injuries, and it details Cecil's and Detective McNair's conversations with Van Asten, which were made in Officer Broadnax's presence. (The Affidavit does not include any narrative from Officer Flaming). In addition, Officer Broadnax assisted Detective McNair in writing the search warrant for purposes of conducting a suspect sexual assault evidence examination on Roberts. (McNair Dep. at 12; Broadnax Dep. at 19).

When, where, and by whom Roberts was arrested is not clear from the record. Officer Broadnax testified that at the time Roberts was arrested, he (Officer Broadnax) was at the hospital. (Broadnax Dep. at 29). Detective McNair interviewed Roberts at the CPD, and an officer from the CPD transported Roberts to the hospital for purposes of the sexual assault examination. (McNair Dep. at 13, 24; Affidavit of Probable Cause at 5). Roberts was then transported to the Hamilton County Jail when that concluded. (Affidavit of Probable Cause at 5).

Roberts' criminal trial was scheduled to begin on May 5, 2010, but Van Asten could not be found. (Plaintiff's Ex. 6 (B), Transcript of *State v. Roberts*, Jury Trial, May 5, 2010). Officer Flaming, along with two other CPD officers, located her car at Roberts' house. (Flaming Dep. at 16). After receiving consent from Roberts' mother, who lived

with Roberts, the officers located Van Asten in the detached garage. (*Id.*; *see also* Van Asten Dep. at 18). She was lying on couch cushions on the floor of the garage with a comforter pulled up over her, and a plate of fairly fresh breakfast food next to her. (*Id.*). She was wearing only a bra and underwear, and was highly intoxicated. (*Id.*). The officers administered a portable breath test on her, the results of which reflected an alcohol concentration of .398. (*Id.* at 17-18). According to Officer Flaming, one of the first things Van Asten said was, "Billy is going to kill me." (*Id.* at 18).

The officers called an ambulance due to Van Asten's high alcohol level and her visible injuries, which included a bruised shoulder and a bruised nose that Van Asten attributed to a "head-butt" by Roberts. (*Id.* at 21-22). Van Asten also reported that Roberts put his hands around her neck. (*Id.* at 22). Officer Flaming testified that she could not remember all of Van Asten's injuries, but that the bruising on her body was not consistent with a severely intoxicated person simply falling down. (*Id.* at 21).

Officer Flaming visited Van Asten in the hospital the following day. (*Id.* at 23-24). Van Asten informed Officer Flaming that Roberts pushed her down in the driveway and strangled her after she met with the prosecutor in preparation for Roberts' criminal trial. (*Id.* at 24-25). At this time, Van Asten had a protective order against Roberts. (*Id.* at 19). Officer Flaming believed that Roberts had violated the protective order even though Van Asten voluntarily walked to his house the night before. (*Id.* at 18-19). Officer Flaming arrested Roberts as he was leaving his residence a few hours later, and he was charged with battery, intimidation, and invasion of privacy. (*Id.* at 27-28). Officer

Flaming wrote the Affidavit of Probable Cause on May 6, 2010.  (*Id*. at 46-47).

## II.    Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986). The non-moving party, however, may not rest on mere allegations or denials in its pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial.  FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

A genuine issue of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249.  Stated differently, only disputes over material facts – i.e., "facts that might affect the outcome of the suit under the governing law" – will preclude the entry of summary judgment.  *Id.* Disputes over immaterial or irrelevant facts will not.  *Id.* at 248.  When determining whether a genuine issue of material fact exists, the court views the record and all reasonable inferences in the light most favorable to the nonmoving party.  *Id*. at 255.

## III.    Discussion

### A.    Federal Claims

There are three federal claims remaining: Roberts' Section 1983 false arrest claim arising from his arrest by Officer Broadnax on February 15, 2009; his Section 1983 false arrest claim arising from his arrest by Officer Flaming on May 6, 2010; and his Section

1983 *Brady* claim.  Roberts did not respond to Defendants' Motion with respect to his May 6 arrest, and for good reason: Officer Broadnax had no involvement in that arrest. And Roberts withdrew his *Brady* claim in his Response.  (*See* Response at 10; Docket # 42).  Accordingly, Roberts' federal claim is limited to his Section 1983 false arrest claim against Officer Broadnax.  The issue, then, is whether Officer Broadnax violated Roberts' Fourth Amendment rights against unreasonable seizures by arresting him without probable cause for the alleged rape of Van Asten on February 15, 2009.

Section 1983 provides a private cause of action against a person, who acting under color of state law, deprives an individual of any "rights, privileges, or immunities secured by the Constitution and laws" of the United States.  *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (quoting 42 U.S.C. § 1983).  A plaintiff asserting such a claim has the burden of establishing the following elements: (1) a deprivation of a right secured by the constitution (2) by a state actor that (3) caused injury to the plaintiff.  *Roe v. Elyea*, 631 F.3d 843, 864 (7th Cir. 2011).

Roberts' allegation of false arrest against Officer Broadnax is unlike a typical false arrest case, because Officer Broadnax did not personally effectuate the arrest.  For liability to attach to Officer Broadnax, Roberts must establish that Officer Broadnax "'caused or participated in [the] alleged constitutional deprivation'" – here, his unlawful arrest. *Starzenski v. City of Elkart*, 87 F.3d 872, 879 (7th Cir. 1996) (quoting *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)).  This requires Roberts to show that "'the conduct causing the constitutional deprivation occur[red] at [Officer Broadnax's]

9

direction or with [his] knowledge and consent.'" *Black v. Lane*, 22 F.3d 1395, 1401 (7th Cir. 1994) (quoting *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985)).

Officer Broadnax headed the investigation of Van Asten's alleged rape. He was the first officer dispatched to the Carmel Fire Station to speak with Van Asten and investigate her complaints, and was present at the hospital while Cecil and Detective McNair questioned her. Officer Broadnax wrote the Affidavit of Probable Cause, and assisted Detective McNair in writing the application for a search warrant of Roberts' person. In fact, Detective McNair testified that he "typed the search warrant out as [Officer Broadnax] explain[ed] the circumstances that he thought warranted the search warrant." (McNair Dep. at 12). These facts establish that Roberts was arrested for Van Asten's rape at Officer Broadnax's direction and with his knowledge and consent. Accordingly, even though Officer Broadnax did not personally arrest Roberts, the court finds Officer Broadnax may be subject to individual liability under Section 1983 for his participation in Roberts' arrest.

The constitutionality of Roberts' arrest turns on the existence of probable cause. Probable cause is an absolute bar to a claim of false arrest under Section 1983. *Sow v. Fortville Police Dep't*, 636 F.3d 293, 301-02 (7th Cir. 2011) (citing *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009)); *Montano v. City of Chicago*, 535 F.3d 558, 568 (7th Cir. 2008); *Kelly v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998) ("An essential predicate to any § 1983 claim for unlawful arrest is the absence of probable cause."); *Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir. 1989) ("[T]he existence of probable cause

for arrest is an absolute bar to Section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution.").

Probable cause exists when an officer reasonably believes, in light of the facts and circumstances within the knowledge of the arresting officer at the time of the arrest, that the suspect had committed or was committing an offense. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). The test is an objective one, which evaluates whether probable cause existed on the facts as they appeared to a reasonable police officer, even if that belief is ultimately found to be incorrect. *Kelly*, 149 F.3d at 646. While probable cause requires more than bare suspicion, it need not be based on evidence which is sufficient to support a conviction. *Maltby v. Winston*, 36 F.3d 548, 556 (7th Cir. 1994).

In the formation of probable cause, an officer can reasonably rely upon information and observation from an eyewitness or victim establishing the elements of a crime. *Pasiewicz v. Lake County Forest Preserve*, 270 F.3d 520, 524 (7th Cir. 2001); *Gerald M. v. Conneely*, 858 F.2d 378, 381 (7th Cir. 1988) (quoting *Gramenos v. Jewel Cos.*, 797 F.2d 432, 439 (7th Cir. 1986), *cert. denied*, 481 U.S. 1028 (1987)). "When police officers obtain information from an eyewitness or victim establishing the elements of a crime, the information is almost always sufficient to provide probable cause for an arrest in the absence of evidence that the information, or the person providing it, is not credible." *Pasiewicz*, 270 F.3d at 524 (citing *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1247 (7th Cir. 1994)). In fact, "[w]hen probable cause has been gained from a reasonably credible victim or eyewitness, there is no constitutional duty to investigate further." *Id.*

(citing *Woods v. City of Chicago*, 234 F.3d 979, 997 (7th Cir. 2001)).

Roberts argues Officer Broadnax did not have probable cause to arrest him because, at the time Van Asten accused Roberts of battery and rape, she was extremely intoxicated. Officer Broadnax did not initially realize she was intoxicated when he interviewed her at the Carmel Fire Station. To him, her behavior was consistent with a victim who was "extremely upset." (Broadnax Dep. at 14). She showed visible signs of a possible battery; she exhibited bruising to her face and body, and she was missing a clump of hair. (*Id*. at 11; *see also* Affidavit of Probable Cause at 2 (noting that Officer Broadnax witnessed swelling and bruising of Van Asten's eyes, cheekbones, lips, jaw, forearms, and breasts)). Officer Broadnax also confirmed that there were prior reports of domestic disturbances between Van Asten and Roberts.

Moreover, Officer Broadnax was present when Van Asten informed Cecil that Roberts severely beat and raped her. Officer Broadnax was also present when Detective McNair took a taped statement of Van Asten. Although Van Asten was reluctant to accuse Roberts of forcible sex, she reiterated her claim that Roberts beat her mercilessly. The observations[2] of Cecil and Detective McNair were included in Officer Broadnax's Affidavit of Probable Cause.

---

[2] It is not clear from the record whether Officer Broadnax was aware of Officer Flaming's conversation with Van Asten or her observations of Van Asten's bodily injuries and search of Van Asten's apartment prior to Roberts' arrest, because these events were not recorded in Officer Broadnax's Affidavit of Probable Cause. Because the probable cause inquiry focuses on what Officer Broadnax knew prior to Roberts' arrest, the court will not consider Officer Flaming's testimony for purposes of this determination.

Van Asten testified that Officer Broadnax never should have believed her story because, at the time Officer Broadnax, Cecil and Detective McNair spoke with her, she was highly intoxicated from Listerine, on pain medication, and completely "out of it." (*See generally*, Van Asten Dep. at 35-41).  At the same time, Van Asten claims that Cecil put words in her mouth such as, "He raped you, didn't he?"  (*Id*. at 35-37).  Van Asten testified that the bruising observed on her body, the clump of hair missing from her head, and the blood found throughout her apartment, were explained by her severe alcohol abuse, which caused her body to bruise easily, her hair to fall out, and her rectum to bleed.  (*Id*. at 32-33).  She does not remember putting knives in her door, but commented that such an act does not sound like something one of "sound mind" would do.  (*Id*. at 41).  In essence, Van Asten denies everything.

Van Asten's claims of a faulty memory and her explanation for the evidence found in her apartment is irrelevant to the probable cause inquiry.  Case law holds that the probable cause determination is an objective one, focusing on "'what the police kn[e]w, not whether they kn[e]w the truth.'" *Sheik-Abdi*, 37 F.3d at 1247 (citation omitted).  Thus, whether Roberts actually raped her is not material to the probable cause inquiry.

Moreover, even if the court were to assume that Van Asten was not a credible victim, the facts and circumstances supporting a finding of probable cause are not limited to Van Asten's testimony.  As shown above, Officer Broadnax was aware of a prior domestic dispute involving Van Asten and Roberts.  In addition, Officer Broadnax and the other assisting officers consistently testified to the injuries they observed on her body,

13

and to her frail emotional state.

As a side note, the probable cause analysis in this case need not be limited to whether Officer Broadnax had probable cause to arrest Roberts for rape. Instead, the relevant inquiry is whether a reasonable police officer, who had the same information as Officer Broadnax at the time of Roberts' arrest, would have had probable cause to arrest Roberts *for any offense*. *Williams v. Rodriguez*, 509 F.3d 392, 399 (7th Cir. 2007) (emphasis added). The facts and circumstances of this case would have led a reasonable police officer to conclude that there was probable cause to arrest Roberts for Van Asten's battery.

Officer Broadnax had probable cause to arrest Roberts for Van Asten's alleged rape and/or battery; therefore, Officer Broadnax did not violate Roberts' Fourth Amendment right to be free from an unreasonable seizure of his person. Accordingly, Defendants' Motion for Summary Judgment on Roberts' Section 1983 false arrest claim must be **GRANTED**.

    **B.**    **State Law Claims**

Roberts' state law claims of false arrest, malicious prosecution, intentional infliction of emotional distress, and negligence against the City arise out of Plaintiff's February 15, 2009, and May 6, 2010, arrests. Defendants argue that Roberts' state law claims – with the exception of Roberts' false arrest claims – are barred by law enforcement immunity, codified in the Indiana Tort Claims Act. IND. CODE § 34-13-3-3(8). In Roberts' Response, he withdrew his claim for malicious prosecution. (*See*

Response at 10, Docket # 42).

The court will begin with Roberts' false arrest claims against the City.

### 1. False Arrest Claims

A claim of false arrest under Indiana law requires the absence of probable cause. *Row v. Holt*, 864 N.E.2d 1011, 1016 (Ind. 2007). The probable cause determination under Indiana law is governed by virtually the same standard imposed by the Fourth Amendment with respect to unlawful seizures; i.e., "'whether a reasonable person, under the facts and circumstances encountered by the arresting officer, would believe that the suspect had committed or was committing a criminal offense.'" *Id*. (quoting *Earles v. Perkins*, 788 N.E.2d 1260, 1265 (Ind. Ct. App. 2003)). Accordingly, for the reasons set forth in the preceding section, Roberts' state law claim for false arrest arising out of his February 15, 2009, arrest cannot survive Defendants' Motion. The court now turns to Roberts' claim of false arrest arising out of his May 6, 2010, arrest.

Officer Flaming arrested Roberts for invasion of privacy (arising out of Van Asten's protective order against him), battery, and intimidation after Van Asten missed Roberts' May 5, 2010, trial. Officer Flaming and two other officers found Van Asten, extremely intoxicated, in Roberts' garage with bruises on her body, the severity of which were not consistent with her simply falling down in an alcoholic stupor. Van Asten told Officer Flaming that Roberts "head-butted" her and said he was going to "kill her." Officer Flaming visited Van Asten in the hospital the following day, at which time Van Asten told Officer Flaming that Roberts beat her after she met with the prosecutor in

preparation for Roberts' rape trial.

Roberts claims that Van Asten told the officers a "lurid tale" that was not believable. Yet, the officers found Van Asten passed out in Roberts' garage with a relatively fresh plate of food next to her on the day of his rape trial. Someone – either Roberts or his mother – let Van Asten into Roberts' garage and gave her food. That fact, in conjunction with the known history of the couple's tumultuous relationship and Officer Flaming's observations of the bruises to her body, Officer Flaming's determination of probable cause to arrest Roberts for violating the protective order was objectively reasonable. And even if there was no probable cause to arrest Roberts for that offense, Officer Flaming had probable cause to arrest Roberts for battery and/or intimidation. *Williams*, 509 F.3d at 399. Accordingly, Defendants' Motion for Summary Judgment must be **GRANTED**.

### 2.     Intentional Infliction and Negligence Claims

The Indiana Tort Claim Act protects a governmental entity, like the City or an employee acting within the scope of the employee's employment, if a loss results from the "adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment." Ind. Code § 34-13-3-3(8). Enforcing the law includes activities associated with effecting the arrest of one who may have broken the law. *City of Gary v. Cox*, 512 N.E.2d 452, 454 Ind. Ct. App. 1987)  Here, Roberts asserts state tort theories of negligence and intentional infliction of emotional distress arising out of his arrests. Because his tort

claims are based on law enforcement action, Roberts' claims are barred by law enforcement immunity. *Miller v. City of Anderson*, 777 N.E.2d 1100, 1104 Ind. Ct. App. 2002) (holding that negligence claim stemming from arrest is barred by law enforcement immunity); *City of Anderson v. Weatherford*, 714 N.E.2d 181, 185-86 (Ind. Ct. App. 1999), *trans. denied* (holding that claim of intentional infliction of emotional distress stemming from an arrest was barred by law enforcement immunity). Defendants' Motion for Summary Judgment on Roberts' state law tort claims for negligence and intentional infliction of emotional distress is therefore **GRANTED**.

### IV.     Conclusion

The court finds Officer Broadnax had probable cause to arrest Roberts on February 15, 2009, and that Officer Flaming had probable cause to arrest Roberts on May 6, 2010. The court further finds that Roberts' state law tort claims for negligence and intentional infliction of emotional distress are barred by law enforcement immunity as codified in the Indiana Tort Claims Act. Roberts conceded the balance of his claims – i.e., his Section 1983 excessive force, illegal search, and false arrest claims related to his arrests on May 6, 2010, May 17, 2010, and June 13, 2010; his Section 1983 *Brady* claim; and his state law tort claim for malicious prosecution. Defendants' Motion for Summary Judgment (Docket # 36) is therefore **GRANTED**.

**SO ORDERED** this  31st  day of October 2012.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

17

Distributed Electronically to Registered Counsel of Record.